IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>STEWART L. MANLEY,<br>   DEFENDANT. | CRIMINAL ACTION NO.<br>1:05-CR-00278-SCJ-AJB |

## Government's Response to Manley's Motion for Compassionate Release

The United States respectfully requests that the Court deny Manley's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) for two independent reasons. First, Manley would pose a danger to the community if released. Second, cutting his sentence in half would not serve the § 3553(a) factors in light of his decades-long history of sexually abusing children.

## Background

In January 2006, Stewart Manley (a/k/a Stuart Manley) pleaded guilty to one count of using an interstate facility to entice a juvenile to engage in sexual activity, in violation of 18 U.S.C. § 2422(b); one count of interstate transportation of child pornography, in violation of 18 U.S.C. § 2252A(a)(1)(A); and one count of interstate distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A). (Doc. 54). The district court sentenced him to 360 months' imprisonment, and the Eleventh Circuit affirmed. *United States v. Manley*, 231 F. App'x 870 (11th Cir. 2007). The government possessed evidence showing the following facts.

On May 6, 2005, Manley contacted an undercover FBI agent in an online chat room. *Id.* at 871. The agent posed as a 33-year-old woman with a 12-year-old daughter. *Id.* Over the next two weeks, Manley sent a series of explicit messages to the agent describing his interest in engaging in sexual activity with her and with the young girl. *Id.* He also sent numerous images of child pornography including some of his own son, who was 11 at the time. *See id.* at 871 & n.1.

On May 19, 2005, Manley began driving from his home in Texas to Roswell, Georgia. (PSR at 8). The next day, agents located his vehicle in the parking lot of a Marriot hotel in Roswell, and later that morning, the FBI arrested Manley at the restaurant where he arranged with the "mother" to meet. (*Id.*) A search of Manley's vehicle and hotel room revealed thumb drives, a laptop, and sexual paraphernalia. (*Id.* at 9). The electronic equipment contained a total of 401 images of child pornography (with 150 of those images consisting of two video clips). (*Id.* at 10). In particular, the laptop contained 31 child pornography images of Manley's son, Stephen, and one of those images depicted Manley sexually abusing his son. (*Id.*)

Stephen testified at the sentencing hearing on June 23, 2006, and the district court credited his testimony. (Tr. 79:13-15).[1] Stephen stated that Manley had been abusing him sexually since he was four or five years old. (Tr. 56:16-60:18). He remembered approximately 20 instances of sexual contact with his father, and he knew that Manley had posted graphic pictures of him on the internet. (Tr. 59:16-

---

[1] The version of the transcript available online (Doc. 64) contains only the first page. The government believes it has located an accurate transcript (attached as Exhibit 1), and all "Tr." citations are to this version.

18). As a result of his father's conduct, Stephen was taking antidepressants and "[did not] like being by [him]self." (Tr. 63:12-64:3). He testified that he "strongly hate[d]" his father and thought Manley "should get life in prison without possibility of parole." (Tr. 64:2-14). Stephen also submitted a statement to the probation officer that he was "angry and depressed" and "hav[ing] trouble coping with the sexual abuse." (PSR at 20).

Manley's older daughter, Tammy, also submitted a statement explaining that she had "struggled to overcome the physical, sexual and mental abuse" by her father "for [her] entire life." (PSR at 21). She also described him as a "manipulative monster" with a "sick twisted mindset." (*Id.*) Tammy explained that the damages he caused "are irreparable and will last a lifetime" and believed that "[a]nything less than life in prison would be a gross injustice." (*Id.*)

At the sentencing hearing, the district court remarked that Manley had a predisposition to certain urges that did not appear to diminish with the passage of time. (Tr. 77:4-15). (Manley was 64 at the time of sentencing.) The court stated, therefore, that "incapacitation drives the sentence," and that "Manley can't be allowed out under conditions that he might present a threat to children." (Tr. 77:21-24). The court also took into account that the victims of Manley's abuse, his own children, sought retribution. (Tr. 77:16-20).

The district judge recognized that the Sentencing Guidelines recommended a term of life and reasoned that "[a]s a practical matter, any substantial sentence will amount to a life sentence for the defendant." (Tr. 78:9-11). But the judge felt that the government's recommendation of 840 months (the statutory maximum) "is the sort of excess which looks more like grandstanding than anything else."

3

(Tr. 78:17-18). Accordingly, the court sentenced Manley to 360 months' imprisonment followed by 10 years of supervised release. (Tr. 78:19-25). He reasoned that this outcome achieves "the equivalent of a life sentence, which is what the guidelines call for, without appearing to grandstand." (Tr. 79:1-4).

Manley is currently incarcerated at the Federal Medical Center in Devens, Massachusetts. His scheduled release date is July 9, 2031. https://www.bop.gov/inmateloc/ (Registration Number 57026-019) (last visited April 15, 2020).

## Discussion

Under 18 U.S.C. § 3582(c)(1)(A)(i), the district court "may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Pursuant to statutory authority, the Sentencing Commission issued a policy statement at § 1B1.13 to govern compassionate release. That statement requires additionally that the court find "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

Even if the defendant establishes "extraordinary and compelling reasons," § 3582 leaves it to the district court's discretion whether to reduce the sentence. The court must consider the § 3553(a) factors to determine if any reduction would be appropriate. *See, e.g.*, *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020).

4

The Court should deny Manley's motion for compassionate release for two reasons. First, he remains a danger to the safety of others and the community. Second, the § 3553(a) factors do not support reducing his sentence.

**A. If released, Manley would pose a danger to the community.**

As noted above, to be eligible for compassionate release, the defendant must not present "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). The relevant factors for this determination include "the nature and circumstances of the offense," "the history and characteristics of the person," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

Even though Manley has declined physically over the past 15 years, he still poses a threat to the community that warrants denying his motion. As the sentencing court noted, Manley has a "predisposition" toward child sex abuse that did not diminish with the passage of time. (Tr. 77:4-15.) While Manley claims he is now too frail to "coerce anyone into any act," Mot. at 3, his medical records attached to the motion do not prove he is incapable of child abuse. In the December 17, 2019 report, the most recent one included, Manley's healthcare provider noted that Manley was "not currently in acute distress" and "denie[d] any medical needs." (Doc. 79-1-4). The records do not establish that he can never constitute a threat, particularly against young children.

Moreover, Manley was convicted of interstate transportation and distribution of child pornography. Anyone who can use a computer can commit similar offenses. The possibility that Manley could again trade child pornography with

others online constitutes a serious threat against the safety of children depicted in such materials. *See, e.g.*, *United States v. Julian*, 242 F.3d 1245, 1247 (10th Cir. 2001) ("Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place.") (quoting *New York v. Ferber*, 458 U.S. 747, 758–60 nn. 9–10 (1982)); *United States v. Ensley*, No. 1:12-MJ-1460-LTW, 2012 WL 5463899, at *4 (N.D. Ga. Nov. 8, 2012) (ordering detention because the defendant's release "poses a significant risk of the further exploitation of the children and adults he is accused of videotaping based on the potential distribution of the images").

**B. The § 3553(a) factors do not support shortening Manley's sentence by half.**

Even where a defendant shows extraordinary and compelling reasons for his release, and that he poses no danger, a district court must still deny the motion if the § 3553(a) factors do not support reducing the sentence. *See, e.g.*, *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (denying compassionate release based on the § 3553(a) factors despite finding first two criteria met); *United States v. Webster*, No. 3:91CR138 (DJN), 2020 WL 618828, at *5 (E.D. Va. Feb. 10, 2020) (same). The Fifth Circuit recently affirmed a district court's denial of compassionate release even though the defendant had satisfied the first two criteria. *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020).

Here, the applicable § 3553(a) factors include:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed –

    a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    b. to afford adequate deterrence to criminal conduct;

    c. to protect the public from further crimes of the defendant; and

    d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. the kinds of sentences available;

4. the kinds of sentences and the sentencing range established for the applicable offense category.

*See* 18 U.S.C. § 3553(a). In this case, "[t]he applicable factors weigh strongly against granting Defendant's motion." *Webster*, 2020 WL 618828, at *6.

    First, Manley was convicted of serious crimes: using a facility of interstate commerce to entice a child to engage in sexual acts, as well as interstate transportation and distribution of child pornography (including images of Manley sexually abusing his son). Testimony at the sentencing hearing established that Manley had abused his son many times. And the PSR recounted the sexual abuse he committed against his daughter decades earlier. That behavior is consistent with his plan to abuse a 12-year-old girl in Georgia. The district court found that Manley had a disposition to child sex abuse that remained active despite his advancing age. Hence, the "nature and circumstances of the offense" and Manley's "history and characteristics" weigh heavily against him.

Second, reducing Manley's sentence "would not reflect the seriousness of the offense or provide just punishment." *Id.* at *7. The district court, in sentencing Manley to 30 years' imprisonment, had intended to impose "the equivalent of a life sentence, which is what the guidelines call for." (Tr. 79:1-4). Both of Manley's children, whom he abused sexually, asked for a life sentence without the possibility of parole. Manley has served only about 15 of the 30 years thus far. The sentencing judge would never have imposed so short a sentence for the serious sexual offenses Manley committed (and intended to commit) against young children. It would be unjust to shorten his sentence by half now.

Third, as discussed in the previous section, maintaining the sentence is necessary to "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). The sentencing court noted that "incapacitation" was a primary consideration in selecting a 30-year term. It stressed that "Manley can't be allowed out under conditions that he might present a threat to children." (Tr. 77:21-24).

Finally, maintaining the sentence imposed will provide Manley with necessary medical care. As Manley admits, the Bureau of Prisons has redesignated him to FMC Devens. *See* Mot. at 3; https://www.bop.gov/inmateloc/ (Registration Number 57026-019) (last visited April 15, 2020). That institution contains the Bureau of Prison's first "Memory Disorder Unit," which is "specifically geared toward housing and treating inmates suffering from dementia." https://www.prnewswire.com/news-releases/first-of-its-kind-memory-disorder-prison-unit-federal-inmates-certified-as-certified-nursing-assistants-federal-correctional-staff-certified-with-

[specialized-certification-300964099.html](specialized-certification-300964099.html). The FMC Devens staff is specially trained and certified to work with those inmates. Moreover, FMC Devens employs a "nursing home model," but in a secure environment. *Id.* "Since nursing homes are not equipped to handle violent offenders, placement of these inmates in a nursing home is not an option." *Id.*

Thus, Manley is being provided medical care effectively within the prison system. His quality of life while residing at FMC Devens will not differ substantially from the relief he proposes: that the Court appoint a "public defender . . . to obtain Medicare, Medicaid, Social Security, and other support . . . and to secure him a place at a long-term care facility." Mot. at 4. The staff at FMC Devens will continue to provide him with treatment for his dementia and other medical needs.

In short, the § 3553(a) factors (particularly the seriousness of the underlying offense and Manley's history of abusing children) weigh heavily against shortening his sentence. Moreover, he is already receiving medical treatment for his dementia at the best BOP facility for handling inmates with his condition.

## Conclusion

Manley is not eligible for compassionate release because he would pose a danger to the community. Even if he does qualify, the § 3553(a) factors indicate that this Court should not reduce his sentence. The United States respectfully requests that the Court deny Manley's motion for compassionate release.

9

Respectfully submitted,

BYUNG J. PAK
*United States Attorney*


/s/ MICHAEL S. QIN
*Assistant United States Attorney*
Provisionally admitted pursuant to Local Rule 83.1

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
(404) 581-6000; fax (404) 581-6181

## CERTIFICATE OF COMPLIANCE AND SERVICE

I certify that this document was prepared using Book Antiqua 13 point font, and that I have caused a copy of the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system. Additionally, a copy of this document has been mailed to the following address:

Stuart Manley
Register #57026-019
FMC Devens
Federal Medical Center
P.O. Box 879
Ayer, MA 01432

This 15th day of April, 2020.

/s/ MICHAEL S. QIN
*Assistant United States Attorney*